UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ROBERT GRUNDSTEIN, J.D.,       )
                               )
          Plaintiff,           )
                               )
     v.                        )          1:25-cv-00402-JAW
                               )
MAINE BOARD OF BAR             )
EXAMINERS, et al.,             )
                               )
          Defendants.          )

**ORDER ON PENDING MOTIONS**

In this pro se action against the Maine Board of Bar Examiners for embargoing a pro se litigant's July 2021 Maine bar exam test score, the court grants a motion to dismiss the complaint based on principles of sovereign immunity, the failure to allege viable claims against the defendants in their personal capacities, the *Rooker-Feldman* doctrine, and principles of claim preclusion.

## I.    BACKGROUND

### A.    Procedural Background

On June 21, 2024, Robert Grundstein, J.D.[1] filed a complaint in the United States District Court for the District of Vermont against the Maine Board of Bar Examiners (the Board) and its individual members (Individual Defendants), seeking

---

[1]    Mr. Grundstein has been a prolific litigator across the country against state bar associations. The Court does not detail his litigation history apart from this case but notes that as long ago as 2012, another district court described Mr. Grundstein's "pattern of vexatious tactics" against another state bar association as "com[ing] extremely close to the line between . . . earnest attempts to correct a perceived injustice . . . and patently frivolous and harassing conduct." *Grundstein v. Wash. State Bar Ass'n*, No. C12-569RSL, 2012 U.S. Dist. LEXIS 127717, at *16-17 (D. Wash. Sep. 7, 2012); *see also Grundstein v. Wash. State Bar Ass'n*, No. C12-569RSL, 2012 U.S. Dist. LEXIS 114581, at *2 (D. Wash. Aug. 13, 2012) (Mr. Grundstein "is no stranger to this Court.  Neither is his claim").

declaratory and injunctive relief on the ground that the Board had violated his rights by refusing to accept the results of a remote bar examination that Mr. Grundstein took in Vermont.  *Verified Compl. for Decl. Relief under 28 U.S.C. § 2201(a) and Inj.* (ECF No. 1) (*Compl.*).  On September 6, 2024, the Board and Individual Defendants moved to dismiss his complaint.  *Defs.' Mot. to Dismiss the Compl.* (ECF No. 2).  On June 10, 2025, a United States District Judge for the District of Vermont granted the Board Defendants' motion to dismiss without prejudice to refiling in a court where venue is proper.  *Opinion and Order Granting Defs.' Mot. to Dismiss* (ECF No. 5).

On June 13, 2025, Mr. Grundstein filed a motion for the Vermont District Judge to reconsider his decision and to transfer venue from Vermont to the District of Maine, thereby saving a new filing fee and in his view streamlining the administrative conduct of the case.  *Mot. to Transfer Juris./Venue* (ECF No. 7).  On August 4, 2025, the Vermont District Judge granted the motion to transfer, noting that if the Defendants continue to pursue dismissal, "their arguments may be considered by a federal judge in Maine without questions of venue or personal jurisdiction complicating the analysis."  *Opinion and Order* at 3 (ECF No. 9).  On August 5, 2025, the case was transferred from the District of Vermont to the District of Maine.  *Civil Docket for Case No.* 2:24-cv-00685-wks (ECF No. 10).

On August 26, 2025, the Board and Individual Defendants filed a motion to dismiss.  *Defs.' Mot. to Dismiss* (ECF No. 12) (*Defs.' Mot.*).  Mr. Grundstein filed his response on September 17, 2025.  *Pl. Br. in Resp. to Def. Mot. to Dismiss and Req. for Hr'g* (ECF No. 13) (*Pl.'s Opp'n*).  On October 1, 2025, the Board and Individual

Defendants filed their reply. *Defs.' Combined Reply in Support of Their Mot. to Dismiss & Resp. to Pl.'s Req. for Oral Arg.* (ECF No. 15) (*Defs.' Reply*).

On September 17, 2025, within his response to the motion to dismiss, Mr. Grundstein filed a request for an order or writ of mandamus. *Mot. for Order or Writ of Mandamus* (ECF No. 14) (*Pl.'s Writ Mot.*). On October 8, 2025, the Defendants responded to Mr. Grundstein's motion for order or writ. *Defs.' Combined Resp. to Pl.'s Mot. for Order or Writ of Mandamus and Mot. for Hr'g* (ECF No. 16) (*Defs.' Opp'n*).

### B.    The Allegations in Robert Grundstein's Complaint

In his June 21, 2024 complaint, Mr. Grundstein alleged that he took and passed the July 2021 Maine bar exam. *Compl.* ¶ 1. Mr. Grundstein alleged that it was a remote examination, which he took in Vermont. *Id.* Mr. Grundstein said that the remote examination was pre-inspected, tested, and approved by audio and video security devices. *Id.* ¶ 2. Mr. Grundstein explained that the examination has three discrete and severable portions: (1) the MPT/a written half day exam designed to test brief writing and the ability to follow instructions, (2) a half day six question essay examination, and (3) a full day multi-state exam. *Id.* ¶ 3. Mr. Grundstein said that it is possible to do badly or have a defect on one part of the examination but retain enough of the remaining materials to pass the exam but "Maine threw out the whole thing." *Id.* ¶ 4.

Following the test, Mr. Grundstein asserted the Board "embargoed Plaintiff's score" and refused to release or reveal it. *Id.* ¶ 6. Mr. Grundstein stressed that the Board has never accused him of "malfeasance." *Id.* ¶ 7. Mr. Grundstein alleged that

this "misplaced malevolence" is consistent with the policies of Melissa Hansen, "director of the exam."[2]  *Id.* ¶ 14.

Based on these factual allegations, Mr. Grundstein set forth five counts: (1) Count One: violations of the Fifth Amendment under *Wolff v. McDonald*, 418 U.S. 539 (1974), of the right of confrontation under *Goss v. Lopez*, 419 U.S. 565 (1975), and of due process under *Tumey v. Ohio*, 273 U.S. 510 (1927), (2) Count Two: violation of the contracts clause under *Appleby v. Delaney*, 271 U.S. 403 (1926), (3) Count Three: violation of the ex post facto clause, (4) Count Four: violation of Maine Bar Rule 202; and Count Five: Vermont civil conversion.  *Compl.* at 1-10.  Mr. Grundstein seeks injunctive relief and a declaratory judgment.  *Id.*

## II.    THE PARTIES' POSITIONS

### A.    The Motion to Dismiss

#### 1.    The Defendants' Motion to Dismiss

In their motion to dismiss, the Defendants first raise sovereign immunity of the Board and against the Board Members sued in their official capacities under the Eleventh Amendment.  *Defs.' Mot.* at 8-10.  Next, asserting that Mr. Grundstein has already litigated and lost these same issues in state court, the Defendants contend that his federal lawsuit is barred by the *Rooker-Feldman*[3] doctrine.  *Id.* at 10-12.

---

[2]      This is how Mr. Grundstein describes Ms. Hansen in the complaint.  *Compl.* ¶ 14.  However, as the Board of Bar Examiners' letterhead confirms, Ms. Hansen is the Executive Director of the Board, not the director of the examination.  *Defs.' Mot.*, Attach. 1, *Letter from Ann M. Courtney to Robert Grundstein* (Oct. 20, 2021) (*Courtney Letter*).

[33]      The *Rooker-Feldman* doctrine, named after *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), prohibits "the lower federal courts from exercising jurisdiction over cases brought by" parties who lost in state court and who are "challenging state-court judgments rendered before the district court proceedings commenced." *Lance*

Third, the Defendants maintain that the lawsuit is barred by principles of res judicata (claim preclusion). *Id.* at 12-14. Fourth, the Defendants separately analyze each count and argue that each is non-meritorious. *Id.* at 14-18.

### 2. Robert Grundstein's Opposition

In response, citing *Ex Parte Young*, 209 U.S. 123 (1908), Mr. Grundstein states that as he is not seeking monetary damages, the Eleventh Amendment does not bar his lawsuit. *Pl.'s Opp'n* at 3. Next, Mr. Grundstein contends that the *Rooker-Feldman* doctrine does not bar his lawsuit because he did not attempt to litigate in state court the federal constitutional issues presented in this lawsuit. *Id.* at 3-4. Saying that he has spoken to Bar administrators in Massachusetts and Vermont, who assured him that their states would not have embargoed his score, Mr. Grundstein argues that the Maine practice is contradicted by the practice in other states. *Id.* at 4. Finally, Mr. Grundstein states that the state tort claims in his pending lawsuit were never litigated in state court. *Id.* at 7.

### 3. The Defendants' Reply

Noticing that Mr. Grundstein added factual allegations in his response not contained in his complaint, the Defendants urge the Court not to consider them. *Defs.' Reply* at 2. Next, citing authority, the Defendants say that *Ex Parte Young* does not allow Mr. Grundstein's lawsuit because the state is the real party in interest in his lawsuit. *Id.*

---

*v. Dennis*, 546 U.S. 459, 460 (2006) (citation and quotation marks omitted), because "the proper forum for challenging an unlawful state court ruling" is the state appellate system followed by a petition for review by the United States Supreme Court. *Davison v. Gov't of P.R.-P.R. Firefighters Corps.*, 471 F.3d 220, 223 (1st Cir. 2006); 28 U.S.C. § 1257.

Turning to claim preclusion, the Defendants reject Mr. Grundstein's effort to deflect the *Rooker-Feldman* bar, saying that, because Mr. Grundstein is not making a generalized constitutional challenge but is contending that the state actions are unconstitutional as applied to him, the bar applies. *Id.* at 3-4. The Defendants next respond to Mr. Grundstein's claim preclusion arguments, saying that his response was so inadequate that the Court should deem the issue waived. *Id.* at 4-5. The Defendants make the same waiver argument concerning Mr. Grundstein's response to the Defendants' analysis of his constitutional claims, namely that his response is so insufficient, it should be deemed a waiver. *Id.* at 5.

Finally, the Defendants urge the Court to adopt the Vermont District Judge's rationale in his decision dismissing the lawsuit in Vermont in which he concluded that the allegations were insufficient to state a cognizable claim. *Id.* at 5-6.

### B.    The Motion for Writ of Mandamus

#### 1.    Robert Grundstein's Mandamus Motion

Within Mr. Grundstein's opposition to the Defendants' motion to dismiss is his request for writ of mandamus against the Board. *Pl.'s Writ Mot.* at 6-7. Mr. Grundstein does not argue this aspect of his motion, but he does state that the Board is compelled to release his score under Rule 7 of the Maine Rules for Admission to the Bar. *Id.*

#### 2.    The Defendants' Opposition

The Defendants question whether Mr. Grundstein is actually requesting a writ of mandamus, given his "nontraditional layout." *Def.'s Reply* at 2. The Defendants

instead view Mr. Grundstein's references to mandamus as separate from the general declaratory and injunctive relief he has sought in the complaint. *Id.* at 2-3. However, if he is seeking a writ of mandamus, the Defendants oppose his motion because he has failed to demonstrate each legal requirement before a writ of mandamus may issue. *Id.* at 3.

## III.    DISCUSSION

### A.    Which Documents the Court May and May Not Consider

In their motion, the Defendants argue that the Court may take into account in deciding the motion the docket entries from the United States District Court for the District of Vermont before the case was transferred to the District of Maine. *Defs.' Mot.* at 4. The Defendants also attached five exhibits to their motion to dismiss: (1) Attachment One: an October 20, 2021 letter from Ann M. Courtney, Esq., Chair of the state of Maine Board of Bar Examiners, informing Mr. Grundstein that his MEE score was embargoed; (2) Attachment Two: a November 1, 2021 letter from Robert Grundstein to Attorney Courtney, requesting that the Board reconsider its embargo decision; (3) Attachment Three: Order dated December 22, 2021 of the Maine Supreme Judicial Court denying Mr. Grundstein's requests for reconsideration of the Board's embargo decision and for a refund for the fees he paid to take the bar examination; (4) Attachment Four: Mr. Grundstein's appeal dated November 13, 2021, of the Board decision; and, (5) Attachment Five: Order Dismissing Petition for Writ of Mandamus from the Maine Supreme Judicial Court dated April 13, 2022. *Id.* at 4 n.6.

7

"Ordinarily . . . any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (citing FED. R. CIV. P. 12(b)(6)). However, "courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citing caselaw). Moreover, "[u]nder First Circuit precedent, when 'a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged),' then the court can review it upon a motion to dismiss." *Diva's Inc. v. City of Bangor*, 411 F.3d 30, 38 (1st Cir. 2005) (alteration in original) (quoting *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 34 (1st Cir. 2001)). The Court may also consider facts susceptible to judicial notice. *Rodriguez-Ramos v. Hernandez-Gregorat*, 685 F.3d 34, 37 (1st Cir. 2012).

The docket entries from the United States District Court for the District of Vermont before it was transferred to this Court are susceptible to judicial notice. *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 18-19 (1st Cir. 2004). A court may take judicial notice of its own docket, a principle that extends to the filings in the Vermont case once it was transferred to this District and became a part of the record in this case. *Doustout v. G.D. Searle & Co.*, 684 F. Supp. 16, 17 n.1 (D. Me. 1988).

Also, the Court may consider the documents attached to the Defendants' motion to dismiss because they are what they appear to be and their authenticity has

8

not been challenged, *see* FED. R. EVID. 901, 1003, they are official public records, and they are documents central to the plaintiff's claims.  *See* FED. R. EVID. 201(b)(2).

In his response to the Defendants' motion to dismiss, arguing that Maine's practice contradicts the practice in other states, Mr. Grundstein wrote that he had spoken with Bar administrators in Massachusetts and Vermont, who confirmed that "there was no significant or proven offense and that Plaintiff's bar score should be released without embargo, penalty or opprobrium." *Pl.'s Opp'n* at 4.  The Defendants objected to the Court's consideration of these factual assertions because they are not contained in the Plaintiff's complaint.  *Defs.' Reply* at 2.

The Court agrees with the Defendants.  "[I]t has long been the rule that assertions in a lawyer's memorandum are not the same as allegations in a complaint." *Olszewski v. Hutchins*, No. 1:24-cv-00209-JAW, 2026 U.S. Dist. LEXIS 19395, at *26 (D. Me. Jan. 28, 2026); *Gulf Oil Ltd. P'ship v. Petro. Mktg. Grp.*, 308 F. Supp. 3d 453, 462 n.8 (D. Mass. 2018) (disregarding plaintiff's assertions made in its brief when no similar allegations appeared in the complaint); *Folan v. Santander Consumer USA Inc.*, No. 1:25-cv-11341-JEK, 2025 U.S. Dist. LEXIS 116325, at *9 n.8 (D. Mass. June 18, 2025) (declining to consider assertions raised only in plaintiff's reply to defendant's opposition brief and not alleged in the complaint); *Ortiz v. Jimenez-Sanchez*, 98 F. Supp. 3d 357, 365 n.5 (D.P.R. 2015) ("[T]he plaintiffs' oppositions introduce a plethora of new factual allegations and legal theories.  But the plaintiffs cannot, of course, add allegations or claims by furnishing them for the first time in an opposition to a motion to dismiss").  The Court will not consider in ruling on this

motion to dismiss the additional facts asserted in Mr. Grundstein's opposition to the motion to dismiss not contained in the complaint.

## B.    Additional Facts

The five documents attached to the Defendants' motion to dismiss establish that on October 21, 2021, Attorney Ann M. Courtney, Chair of the state of Maine Board of Bar Examiners, wrote Mr. Grundstein and informed him that based on its review of the monitoring videos from the July 2021 Maine Bar Examination, the Board was notified that he had violated a testing condition for the taking of the MEE portion of the examination because he had used scratch paper during the MEE portion of the examination.  *Courtney Letter* at 1.  Attorney Courtney informed Mr. Grundstein that his Uniform Bar Examination (UBE) score for the July 2021 examination "has been permanently embargoed with the National Conference of Bar Examiners."  *Id.*

Next, on November 1, 2021, Mr. Grundstein wrote to Attorney Countney and asked that the embargo decision be reconsidered.  *Defs.' Mot.*, Attach. 2, *Letter from Robert Grundstein to Maine Bd. of Bar Examiners* (Nov. 1, 2021).

Third, on November 13, 2021, Mr. Grundstein filed an appeal and request for enlargement of time with the Supreme Judicial Court for the state of Maine, challenging the Board embargo decision.  *Defs.' Mot.*, Attach. 4, *Appeal from Bd. of Bar Examiners Dec. and Req. for Enlargement of Time* (Nov. 13, 2021).

Fourth, on December 22, 2021, Associate Justice Ellen Gorman of the Maine Supreme Judicial Court denied Mr. Grundstein's request for a refund of the $150 late

fee that he paid to the Maine Board of Bar Examiners and his appeal from the Board's decision not to release his UBE score because of a violation of a Board rule during the UBE examination. *Defs.' Mot.*, Attach. 3, *Order Denying Reqs. for Relief, Supreme Judicial Ct., State of Me.* (Dec. 22, 2021) (*Law Ct. Order*).

Finally, on April 13, 2022, Associate Justice Andrew M. Horton issued an order dismissing Mr. Grundstein's petition for writ of mandamus. *Defs.' Mot.*, Attach. 5, *Order Dismissing Pet. for Writ of Mandamus, Supreme Judicial Ct., State of Me.* (Apr. 13, 2022).

### C.    Sovereign Immunity: the Board and its Members in their Official Capacities

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. As a general principle, "[s]tates and their agencies are entitled to sovereign immunity 'regardless of the relief sought.'" *Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 97 (1st Cir. 2009) (quoting *Kentucky v. Graham*. 473 U.S. 159, 167 n.14 (1985)). As the United States Supreme Court first explained in 1890 in *Hans v. Louisiana*, 134 U.S. 1 (1890), sovereign immunity has two parts: first that each State is a sovereign entity in our federal system, and second that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. *Id.* at 13; *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). Mr. Grundstein has not alleged that the state of Maine has consented to his lawsuit or that Congress has authorized it.

11

To the contrary, the Maine Legislature has enacted a statute that provides it does not waive sovereign immunity "except where such waiver is explicitly stated by law," 14 M.R.S. § 8118, and Maine has strictly limited the instances where it has authorized a claim against the state.  *See* 14 M.R.S. § 8104-A (authorizing a lawsuit for its negligent acts in owning, maintaining or using a vehicle, for its negligent acts in the construction, operation or maintenance of public buildings, for discharge of pollutants, and for road construction and street cleaning or repair) & § 8104-B (gives examples of actions for which the state is not amendable for suit).  Mr. Grundstein makes no claim that a Maine statute authorizes his lawsuit.

In addition, Eleventh Amendment immunity extends to a state's agencies and its arms.  *Irizarry-Mora v. Univ. of P.R.*, 647 F.3d 9, 14-16 (1st Cir. 2011) (concluding that the University of Puerto Rico is "an arm of the Commonwealth" and therefore entitled to sovereign immunity).   Maine statutory law allows the Supreme Judicial Court of Maine to create a board of bar examiners, 4 M.R.S. § 801, and provides that "[a]ll procedural, administrative and budgetary actions of a board of bar examiners shall be subject to rules established by the Supreme Judicial Court and are deemed to be actions of the Supreme Judicial Court."  *Id.*  The Court concludes that the Maine Board of Bar Examiners is an arm of the state for purposes of the Eleventh Amendment.  *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433 (1982) (noting that the local District Ethics Committee acts as an arm of the New Jersey Supreme Court in receiving and investigating complaints and holding hearings); *Grundstein v. Vt. Bd. of Bar Examiners*, 748 F. Appx. 425, 427 (2nd Cir.

2019) ("Grundstein challenged an order of the Vermont Board of Bar Examiners . . . which is an extension of the Vermont Supreme Court"); *Mullane v. Mass. Bd. of Bar Examiners*, No. 20-cv-11382-DJC, 2021 U.S. Dist. LEXIS 171888, *5 (D. Mass. Sep. 10, 2021) ("[T]he Massachusetts Supreme Court retains the ultimate authority to decide a person's fitness to practice law in the Commonwealth, and bar admissions proceedings conducted by the [Board of Bar Examiners] are an extension of that authority") (internal citations and punctuation omitted); *Grundstein v. Wash. State Bar Ass'n*, No. C12-569RSL, 2012 U.S. Dist. LEXIS 114581, at *6-8 (D. Wash. Aug. 13, 2012) (concluding that *Younger* abstention applied to Mr. Grundstein's federal claim because there were ongoing state proceedings and bar proceedings implicate important state interests).

In his response, Mr. Grundstein justifies his lawsuit against the Board and its members by explaining that he is not seeking monetary damages against the Defendants, only injunctive and declaratory relief, and therefore in his view, the Eleventh Amendment does not bar his complaint because he is asserting that the Defendants violated his due process, property, confrontation, and contract rights. *Pl.'s Opp'n* at 3 (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

The Defendants point out, however, that *Ex Parte Young* applies only when a federal court commands a state official to "do nothing more than refrain from violating federal law." *Defs.' Reply* at 2 (quoting *Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011)). But, Defendants say, "*Ex Parte Young* 'does not apply "when the state is the real, substantial party in interest"'" *Id.* (quoting

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984)). Here, Defendants argue, the Maine Board of Bar Examiners qualifies as an arm of the state and therefore Mr. Grundstein's lawsuit is barred by the Eleventh Amendment.

The Court concludes that the Defendants have the better argument. In *Virginia Office*, the United States Supreme Court explained that the *Ex Parte Young* doctrine "has existed alongside our sovereign-immunity jurisprudence for more than a century, accepted as necessary to 'permit the federal courts to vindicate federal rights.'" *Va. Office*, 563 U.S. at 254-55 (quoting *Pennhurst*, 465 U.S. at 105). The *Virginia Office* Court wrote that *Ex Parte Young* "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State of sovereign-immunity purposes." *Id.* at 255 (citation omitted). But the Supreme Court stressed that the *Ex Parte Young* doctrine "is limited to that precise situation, and does not apply when the state is the real, substantial party in interest, as when the judgment sought would expend itself on the public treasury or domain, or interfere with public administration." *Id.* (internal punctuation and citations omitted). Thus, "when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst*, 465 U.S. at 101-02.

In *Muirhead v. Mecham*, 427 F.3d 14 (1st Cir. 2005), the First Circuit explained the test to determine whether the relief sought is considered against the sovereign, writing that "[w]hen a plaintiff seeks specific performance, the answer to the inquiry

14

about relief hinges on whether the redress obtained against the officer will, in practical effect, be obtained through the sovereign." *Id.* at 18 (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 695 (1949)). Viewed under *Muirhead*, the Court easily concludes that Mr. Grundstein is demanding relief from the Board and its members that can only be obtained "through the sovereign." *Id.* Mr. Grundstein is effectively arguing that the Board and its members must not apply their own rules concerning the taking of the MEE portion of the bar examination, thus to obtain his requested relief, the "effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Id.* (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)).

The Court concludes that Mr. Grundstein's claims against the Board and its members in their official capacities are barred by the Eleventh Amendment.

### D.    The Board Members in Their Personal Capacities

"[S]overeign immunity provides no protection against personal-capacity suits." *Clemente Props., Inc. v. Pierluisi-Urrutia*, 165 F.4th 1, 12 (1st Cir. 2026). In general, personal capacity claims "'must be premised on . . . [a defendant's] own acts or omissions' which deprived a plaintiff of rights, privileges, or immunities protected under federal law." *Perez v. Springfield Police Dep't*, No. 25-30063-MGM, 2025 U.S. Dist. LEXIS 230471, at *7-8 (Mass. D. Nov. 24, 2025) (quoting *Justiniano v. Walker*, 986 F.3d 11, 20 (1st Cir. 2021)) (internal quotations omitted). The Court reviewed Mr. Grundstein's complaint to determine whether there are any allegations that would support his lawsuit against members of the Board in their individual capacities

and found no allegations that would plausibly generate a personal capacity lawsuit against any of the defendants.

The only specific allegations against any defendant that could even remotely generate a personal capacity claim are contained in paragraph 14 and the conclusion of the complaint. After describing the Board's embargo, Mr. Grundstein alleges: "This embargo is consistent with the misplaced malevolence in Defendant's office as administered by Melissa Hansen, director of the exam." *Compl.* ¶ 14. Next, in his conclusion, Mr. Grundstein complains about an additional $150 the Board charged him after it returned his check. *Id.* ¶ 4. He states, "This sort of bad Faith has consistently been a part of transactions with the Maine Board of Bar Examiners and Melissa Hansen/Director." *Id.* ¶ 5.

As regards Mr. Grundstein's allegations against Ms. Hansen, although a court is required to accept as true a complaint's well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor, courts disregard "conclusory legal allegations" and factual assertions that are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Cangrejeros de Santurce Baseball Club, LLC v. Liga de Béisbol Profesional de P.R., Inc.*, 146 F.4th 1, 11 (1st Cir. 2025) (citations omitted). Here, Mr. Grundstein fails to allege facts underlying his conclusory allegations against the Executive Director of the Maine Board of Bar Examiners to justify his conclusory allegations. As for Mr. Grundstein's malevolence allegation against Ms. Hansen, Mr. Grundstein's complaint otherwise alleges that the Maine Board of Bar Examiners, not Ms. Hansen, made the decision

to embargo his score. *Compl.* ¶ 6 ("Defendant Board of Overseers (sic) embargoed Plaintiff's score"). Moreover, the October 20, 2021 letter notifying him of the Board's decision came from Chair Courtney, not Ms. Hansen. *Courtney Letter* at 1. As for the $150 fee that underlies Mr. Grundstein's bad faith allegation against Ms. Hansen, Justice Gorman of the Maine Supreme Judicial Court ruled that the Board's rules "specifically provide that fees paid to the Board are nonrefundable." *Law Ct. Order* at 3 (citing ME. BAR ADMISS. R. 6(d)). There are simply not enough facts alleged in the complaint to withstand a motion to dismiss for the personal capacity allegations against Ms. Hansen.

Indeed, in addition to the absence of any viable personal capacity allegations, as Mr. Grundstein has limited his claim of relief to declaratory and injunctive relief, there is no reason to conclude that if the Board members and Ms. Hansen acted in their personal, as opposed to official, capacities, they would have the authority to provide Mr. Grundstein the relief he seeks against them as individuals. *See Lewis v. Clarke*, 581 U.S. 155, 161-63 (2017); *Clemente Properties, Inc. v. Pierluisi-Urrutia*, 165 F.4th 1, 35-36 (1st Cir. 2026).

### E.    The *Rooker-Feldman* Doctrine and Claim Preclusion

Although the Court could stop with its conclusions that Mr. Grundstein's claims fail because they violate the Eleventh Amendment and because they have failed to provide a basis for proceeding against the Defendants in their individual capacities, in the interest of completeness, the Court addresses whether Mr. Grundstein's claims are barred by the *Rooker-Feldman* doctrine and claim preclusion.

As noted earlier, the *Rooker-Feldman* doctrine, named after *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), prohibits "the lower federal courts from exercising jurisdiction over cases brought by" parties who lost in state court and who are "challenging state-court judgments rendered before the district court proceedings commenced," *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quotation marks omitted), because "the proper forum for challenging an unlawful state court ruling" is the state appellate system followed by a petition for review by the United States Supreme Court. *Davison v. Gov't of P.R.-P.R. Firefighters Corps.*, 471 F.3d 220, 223 (1st Cir. 2006.

The *Rooker-Feldman* doctrine "applies only in the 'limited circumstances' where 'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state court judgment and seeking review and rejection of that judgment.'" *Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 23-24 (1st Cir. 2005) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)); *see Grundstein v. Lamoille Super. Dkt. Entries/Orders*, 821 F. App'x 46, 47 (2d Cir. 2020).

First, to the extent Mr. Grundstein is raising the issue of the Board's $150 charge in this lawsuit, his allegations are clearly barred by the *Rooker-Feldman* doctrine. On December 22, 2021, Justice Ellen Gorman, Justice of the Maine Supreme Judicial Court, addressed and rejected his claim for a refund of the $150 late fee, noting that Rule 6(d) of the Maine Bar Admission Rules provided that "fees paid to the Board are nonrefundable." *Law Ct. Order* at 3. Thus, Justice Gorman

18

rejected this specific claim on December 22, 2021, long before June 21, 2024, when Mr. Grundstein filed this federal lawsuit in the District of Vermont, and in raising this issue again in this federal lawsuit, Mr. Grundstein's complaint on this point is clearly barred by *Rooker-Feldman*.

Whether his constitutional claims are similarly barred by *Rooker-Feldman* is more nuanced. In *Exxon Mobil Corporation. v. Saudi Basic Industries Corporation*, 544 U.S. 280 (2005), the Supreme Court discussed whether the *Rooker-Feldman* doctrine necessarily precludes a federal court action once a state court action has been resolved and observed that "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law." *Id.* at 293. The *Exxon Mobil* Court mentioned that both the Full Faith and Credit Act, 28 U.S.C. § 1738, and claim and issue preclusion effects would be implicated, if the losing state court litigant attempted to raise issues in federal court that could have been raised in the final state court adjudication. As the First Circuit has explained, "[r]es judicata -- also known as claim preclusion -- is a longstanding legal doctrine that 'a final judgment on the merits of an action precludes the parties from relitigating claims that were or could have been raised in the prior action.'" *Rivera-Rosario v. LSREF2 Island Holdings, Ltd., Inc.*, 79 F.4th 1, 2 (1st Cir. 2023). (quoting *Haag v. United States*, 589 F.3d 43, 45 (1st Cir. 2009)); *accord Dixon-Tribou v. McDonough*, 86 F.4th 453, 459 n.4 (1st Cir. 2023).

Under the Full Faith and Credit Clause, U.S. Const. art. VI, as codified in 28 U.S.C. § 1738, a federal court must apply Maine claim preclusion rules to Maine state

court judgments. Under Maine law, claim preclusion prevents relitigating claims if "(1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." *20 Thames St. LLC v. Ocean State Job Lot of Me. 2017 LLC*, 2021 ME 33, ¶ 15, 252 A.3d 516 (quoting *Wilmington Tr. Co. v. Sullivan-Thorne*, 2013 ME 94, ¶ 7, 81 A.3d 371). The first two elements are met here, because, as explained above, Mr. Grundstein raised a challenge to the Board's embargo decision against the same or substantially identical parties (i.e., the Board and its officials) for which the Law Court reviewed and issued final judgment on December 22, 2021. *See Law Ct. Order.*

As to the third element of Maine claim preclusion, even though Mr. Grundstein did not raise his constitutional claims in his state court challenge, the Court concludes that he could have done so, and therefore he is precluded under principles of claim preclusion from raising in this court what he could have raised in the state court litigation. Mr. Grundstein's constitutional claims arise from the Board's embargo decision previously reviewed by the Maine Law Court, and he alleges no new or different facts to distinguish his constitutional claims from those that could have been litigated in the prior state court action. *See 20 Thames St. LLC*, 2021 ME 33, ¶ 17, 252 A.3d 516 (quoting *Sebra v. Wentworth*, 2010 ME 21, ¶ 12, 990 A.2d 538) (explaining that the third element of Maine claim preclusion applies a "transactional test, examining the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon

20

the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong"). Nor could Mr. Grundstein claim that the state court could not have addressed the constitutional claims he raises here. The First Circuit has long held that "state courts, consistent with the imperatives of the Supremacy Clause, *see* U.S. Const. art. VI, are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties." *Casa Marie, Inc. v. Super. Ct.*, 988 F.2d 252, 262 (1st Cir. 1993) (internal footnote omitted).

### F.    Mandamus Request

Based on the Court's conclusion that his pending complaint is non-meritorious, the Court denies Mr. Grundstein's request for a writ of mandamus, because his request is premised on the success of his underlying allegations against the Defendants.

## IV.    CONCLUSION

The Court GRANTS the Defendants' Motion to Dismiss for Lack of Jurisdiction and Motion to Dismiss for Failure to State a Claim (ECF No. 12) and DENIES the Plaintiff's Motion for Order or Writ of Mandamus (ECF No. 14). The Court DISMISSES Plaintiff's Complaint (ECF No. 1).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of March, 2026

21